# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DISCOVER BANK,

      Plaintiff,

         v.

GREENWOOD HOUSE HOME FOR THE
JEWISH AGED t/a ABRAMS RESIDENCE,
et al.,

      Defendants.

Civil Action No. 18-16020 (RK) (RLS)

**<u>OPINION</u>**

**<u>KIRSCH, District Judge</u>**

**THIS MATTER** comes before the Court upon several motions, including a Motion for Sanctions and to Levy filed by Defendant Greenwood House Home for the Jewish Aged t/a Abrams Residence ("Greenwood") (ECF No. 343) and a series of motions filed by *pro se* Defendant Leslie Shayne ("Shayne") seeking, *inter alia*, summary judgment (ECF No. 371), recusal of the Undersigned (ECF No. 382), and a stay of all matters, (ECF Nos. 376, 383.) The Court has carefully considered the parties' submissions and decides the motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, the Court GRANTS Greenwood's Motion for Sanctions and to Levy. (ECF No. 343.) This Court DENIES each of Shayne's pending motions. (ECF Nos. 371, 375, 376, 377, 378, 379, 382, 383.)

# I.   **BACKGROUND**[1]

## A. FACTUAL BACKGROUND

This interpleader arises from a dispute between Shayne and Greenwood relating to the purported funds of Shayne's now-deceased mother Charlotte Shayne ("Charlotte"). Shayne claims he owns the funds at issue, while Greenwood alleges that Shayne and Charlotte both owe Greenwood upwards of $300,000 for the costs of care and residence by Charlotte at Greenwood's residential facility. Each claim is supported by diametrically opposed state court orders.

On or about October 2, 2018, Discover Bank ("Discover") received a correspondence from Greenwood's counsel directing it to comply with two New Jersey Superior Court orders and "not permit the funds in the enclosed [Discover] account [owned by Shayne] to be disbursed other than to the firm's trust account." (Compl. at ¶ 12, ECF No. 1; Certification of David G. Murphy ("Murphy Certif.") at *7, Ex. 1, ECF No. 1-3.)[2] The first order, issued on August 14, 2018, appointed Charlotte's niece, Sondra Lampl ("Lampl"), as legal guardian of Charlotte and her estate (Murphy Certif. at *15–19).[3] The order further instructed Shayne to "immediately return to [Lampl], on behalf of [Charlotte], all funds belonging to [Charlotte] previously withdrawn by him" from several bank accounts associated with Charlotte that he deposited into his Discover accounts. (*Id.* at *19.) The second order, issued on September 14, 2018, directed Shayne to "immediately identify all brokerage and/or bank accounts holding funds that belong to Charlotte Shayne and . . . immediately take the necessary steps to have the funds in these accounts transferred into

---

[1] The factual and procedural histories of this matter are well known to the parties and to the Court. The Court therefore recounts only the details necessary to resolve the motions discussed herein.

[2] The Court refers to page numbers in the Murphy Certification by ECF header and denotes such references with an asterisk.

[3] *In the Matter of Charlotte Shayne, an Alleged Incapacitated Person*, No. 18-00597.

the escrow account of Fox Rothschild LLP to secure the care provided by [Greenwood] to [Charlotte]."[4] (*Id.* at *8–10.) Thereafter, on October 9, 2018, the New Jersey Superior Court granted partial summary judgment in favor of Greenwood related to Shayne's "fraudulent conveyance" of funds belonging to Charlotte from her bank accounts to Shayne's own Discover accounts. (Kravitz Decl., Ex. K, ECF No. 13 at 249–250.) The court then voided the transfers pursuant to the New Jersey Uniform Fraudulent Transfer Act. (*Id.*)

About two weeks later, on or about October 18, 2018, Discover received correspondence from Shayne demanding that Discover immediately unfreeze and release the funds that Discover had frozen pursuant to the New Jersey orders. (Compl. at ¶ 17; Murphy Certif. at *25.) In support of his demands, Shayne produced an order issued by the South Carolina Probate Court, Oconee County, dated October 18, 2018, ordering "the immediate release of his personal assets held by Discover Bank, to [Shayne]."[5] (Compl. at ¶ 18; Murphy Certif. at *26.) The order further declared that South Carolina had appointed Shayne as Charlotte's guardian and conservator, and that the judgments issued in New Jersey were "improper and without any legal basis whatsoever." (Murphy Certif. at *26.) On November 6, 2018, Shayne sent Discover a copy of a second order, issued by the same judge of the South Carolina Probate Court on November 6, 2018, Oconee County, holding Discover in contempt of court. (Compl. at ¶ 19; Murphy Certif. at *43–45.) Faced with competing state court orders, Discover filed an interpleader action in this Court pursuant to 28 U.S.C. § 1335 on November 9, 2018.

Shortly after Discover filed this interpleader action, on December 5, 2018, the New Jersey Superior Court entered a final judgment in the New Jersey proceeding. The court entered "[f]inal

---

[4] *Greenwood House Home for the Jewish Aged t/a Abrams Residence v. Charlotte Shayne, et al.*, consolidated docket numbers MER-C-69-17 and MER-L-000290-17.

[5] *In re: Leslie Jay Shayne*, 2017-GC-37-00-003 and -004.

judgment . . . in favor of [Greenwood] . . . and against [Shayne], in the amount of $279,223.16" related to Shayne's "fraudulent transfer" of funds from Charlotte's accounts to his own. (Kravitz Decl., Ex. 3, ECF No. 43-2 at 13.)[6] The order voided the transfer of funds from numerous bank accounts belonging to Charlotte to Shayne's Discover accounts pursuant to the New Jersey Uniform Fraudulent Transfer Act. (*Id.* at 249–250.)

## B. PROCEDURAL HISTORY

Discover filed this action to resolve competing ownership claims to "at least $68,911.75" which was, at the time the Complaint was filed, held in Discover bank accounts "in the name of Leslie J. Shayne." (Compl. at ¶ 10.) At that time, Discover had frozen $275,491.87 across six different accounts belonging to Shayne. (ECF 294-1 at 7.) On January 28, 2019, the Honorable Freda L. Wolfson, U.S.D.J., ordered that Discover unfreeze $30,000 in funds so that Shayne could provide for living expenses. (ECF No. 36 at 2; *see also* October 21, 2019 Status Conference Tr. 41:14–23, ECF No. 142 (noting that the release of $30,000 was purely "an equitable ruling to benefit [Shayne] without making a finding" as to ownership of the funds; ECF No. 197 at 4 (denying Shayne's additional request to have money released so that he could hire an attorney because "[g]ranting that request would essentially circumvent a dispositive question pending in the case: whether [Greenwood] is entitled to any of the monies in dispute and, if so, how much.").) The order also required the parties to "collectively determine which funds contained within the Discover accounts belong to [Charlotte]," and enjoined all Defendants, including Greenwood and

---

[6] The Court notes that, prior to the entry of final judgment on December 5, 2018, a consent judgment was entered into between Sondra Lampl as guardian for Charlotte, Lawrence Gilman (counsel for Lampl), and counsel for Greenwood. That judgment was "entered in favor of [Greenwood] . . . and against [Charlotte] in the amount of $250,146.85, for room, board and care rendered through October 31, 2018." (Kravitz Decl., Ex. S, ECF No. 13 at 330–332.) The judgment also assigned to Greenwood "any and all rights and/or claims to recover the funds and/or asserts that belong to [Charlotte], that were taken by [Shayne]." (*Id.* at 331.) However, that consent judgment was expressly superseded by the final judgment rendered on December 5, 2018. (Kravitz Decl., Ex. 3, ECF 343-2.)

Shayne, "from instituting or prosecuting legal proceedings in state or federal courts affecting, involving, or any way relating to the Discover accounts." (ECF No. 36 at 1–2.)

Notwithstanding the interpleader injunction, Shayne then filed several actions in South Carolina state courts seeking to unfreeze his Discover accounts. Both were ultimately removed to the United States District Court for the District of South Carolina. One action was dismissed with prejudice for failure to prosecute after Shayne failed to respond to multiple court orders. *Shayne v. Discover Bank*, No. 19-494, 2019 WL 2058538, (D.S.C. May 9, 2019). Another matter also was dismissed as duplicative of the claims at issue in this action. *Shayne v. Discover Bank*, No. 21-3544, 2022 WL 1090540, at *2 (D.S.C. Jan. 26, 2022), *report and recommendation adopted*, 2022 WL 1090610 (D.S.C. Apr. 11, 2022), *dismissed*, No. 22-1602, 2022 WL 20042290 (4th Cir. Dec. 21, 2022). This Court also imposed sanctions against Shayne by awarding fees and costs to Discover. *Id.*

Meanwhile in this litigation, Shayne filed an Answer and counterclaim against Discover alleging conversion in connection with the freezing of his accounts. (ECF No. 22.) Discover moved to dismiss Shayne's counterclaim, and the Honorable Michael A. Shipp, U.S.D.J., denied Discover's motion without prejudice, reasoning that "[a]bsent further information on the funds," this Court "could not determine whether (1) Discover has set forth a proper interpleader action, (2) Shayne's Counterclaim is independent of the interpleader action, and (3) the freezing of the funds was authorized under Discover and Shayne's written agreement." (ECF No. 233 at 2.)

On June 30, 2022 Discover renewed its Motion to Dismiss Shayne's counterclaim and for interpleader relief. (ECF No. 294.) On February 28, 2023, the Honorable Georgette Castner, U.S.D.J., granted Discover's motion. (ECF No. 337.) This Court held that Discover's statutory interpleader action was properly brought under the interpleader statute, 28 U.S.C. § 1335. (*Id.* at

7–8.) As such, Discover was "shielded from any liability as to Shayne's counterclaim" for conversion of the frozen funds. (*Id.* at 16 (citing *Prudential Ins. Co. of Am. V. Hovis*, 553 F.3d 258, 266 (3d Cir. 2009).) However, because Discover had not yet deposited the property into the Court Registry as required by the interpleader statute, Judge Castner conditioned the Court's exercise of subject matter jurisdiction on a sworn affidavit stating the precise amount of the funds at issue. (*Id.* at 8.) This Court also granted Discover's request to move for an award of legal expenses, attorney's fees, and costs. (*Id.* at 16.)

On May 15, 2023, the case was reassigned to the Undersigned. By this time, Discover had complied with this Court's instruction and filed a Motion to Deposit Funds along with the affidavit of one of its Process Review Specialists documenting the current balance in each of the six disputed accounts. (ECF No. 340-1.) On June 8, 2023, this Court found that Discover had adequately established the total balance in the disputed funds and accordingly granted Discover's motion to deposit the funds. (ECF No. 366 at 3.) Further, finding Discover's efforts considerably more onerous than a typical interpleader action, this Court awarded $43,888.13 in attorney's fees (fifteen (15) percent of the total funds in dispute). (*Id.* at 4–5.) This approximately halved Discover's original request, which this Court found would inappropriately deplete the funds. (*Id.* at 5.) Shortly thereafter, Discover deposited the total account balances of $220,832.78 into the Court Registry. (ECF No. 381.) Following that, Discover was dismissed from this action with prejudice. (ECF No. 384.)

## C. SHAYNE'S MOTIONS

The day after this Court ordered the deposit of the interpleaded funds into this Court Registry, Shayne began filing a series of eight (8) motions between June 13 and July 13, 2023. On June 13, 2023, Shayne filed a Motion for Summary Judgment, which also sanctions against

Greenwood for allegedly defrauding this Court. (ECF No. 371.) On June 15, 2023, Shayne filed a Motion to Compel Discover, who had been dismissed from this action, to answer a series of interrogatories regarding Shayne's bank accounts, including account statements and "communications of any sort[] regarding any of the funds" at issue. (ECF No. 375.) On June 16, 22, 25, 28, and July 13, 2023, Shayne filed a series of repetitive motions to stay and to vacate this Court's order granting the deposit of the interpleader funds into the Court Registry; in these motions, Shayne makes numerous arguments already rejected by the Court and raises complaints pertaining to his allegedly deteriorating medical condition. (ECF Nos. 376, 377, 378, 379, 383.) On June 22, 2023, after filing the June 13th, 15th, 16th and 22nd motions, Shayne wrote to counsel for Discover and Greenwood stating, "Do y'all give up yet?" (ECF No. 385 at 3.) And on July 5, 2023, Shayne sought the recusal of the Undersigned. (ECF No. 382.)

## II.   <u>LEGAL STANDARD</u>

"Statutory interpleader 'is a remedial device which enables a person holding property or money to compel two or more persons asserting mutually exclusive rights to the fund to join and litigate their respective claims in one action.'" *Schlafly v. Eagle Forum*, No. 17-2522, 2019 WL 2498768, at *4 (D.N.J. June 17, 2019) (quoting *NYLife Distribs., Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 374 (3d Cir. 1995)); *see also* 28 U.S.C. § 1335. The result is a "win-win situation" whereby "[t]he stakeholder avoids multiple liability" and the claimants are able to resolve their dispute "in a single proceeding, without having to sue the stakeholder first and then face the difficulties of finding assets and levying execution." *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 275 (3d Cir. 2007) (quotations and citations omitted).

"An interpleader action commenced under [28 U.S.C. § 1335] typically involves two steps." *NYLife Distribs.*, 72 F.3d at 375. In the first step, "the district court determines whether the

requirements of the statute have been met and whether the stakeholder may be relieved from liability." *Id.* After determining that the interpleader is properly brought, the district court then "adjudicates the defendants' adverse claims to the interpleaded fund." *Id.* This latter stage "proceeds like any other action" and "is ultimately resolved by the entry of a judgment in favor of the claimant who is lawfully entitled to the stake." *Id.* (citing *Diamond Shamrock Oil & Gas Corp. v. Commissioner of Revenues*, 422 F.2d 532, 534 (8th Cir. 1970)).

This Court has already granted Discover statutory interpleader relief and dismissed Discover from the action. (ECF Nos. 337, 366.) Thus, the Court now turns to the second step of the analysis: adjudicating the defendants' adverse claims to the interpleaded funds.

## III.   **DISCUSSION**

The Court discusses each of the pending motions in this matter in turn, beginning with Greenwood and Shayne's competing arguments for the interpleaded funds.[7]

### A.   GREENWOOD'S MOTION TO LEVY AND SHAYNE'S MOTION FOR SUMMARY JUDGMENT

Both Greenwood and Shayne have filed dispositive motions seeking turnover of the entirety of the *res* to their respective accounts. The parties' claims are supported by conflicting state court orders. Greenwood's position is predicated on the December 5, 2018 New Jersey Superior Court final judgment against Shayne for $279,223.16. Greenwood argues that the New Jersey Superior Court judgment is binding because the judgment must be afforded full faith and credit and because it precludes Shayne from any entitlement to the funds based on the doctrines of

---

[7] The Court notes that while Shayne is proceeding *pro se*, he is an attorney, licensed in the state of South Carolina, with over forty years of experience. (Shayne Cert. ¶ 1, ECF No. 20 at 1.) Nevertheless, the Court will attempt to construe his filings—which are, at best, difficult to discern—liberally. *See Shah v. Caesars Entm't Corp.*, No. 1814108, 2019 WL 5558356, at *2 (D.N.J. Oct. 28, 2019) ("A document filed pro se is to be liberally construed."). Notwithstanding the mandate that the Court construe *pro se* filings liberally, *pro se* litigants nonetheless "cannot flout procedural rules — [they] must abide by the same rules that apply to all other litigants." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

claim preclusion, or *res judicata*, and issue preclusion, or collateral estoppel. Shayne responds—without citation to legal authority—that the New Jersey judgment is invalid because the New Jersey Superior Court did not have jurisdiction over him.[8] By contrast, Shayne's position is predicated on the October 17, 2018 South Carolina Probate Court which ordered the release of the funds frozen by Discover to Shayne. Greenwood responds that the South Carolina order was issued *ex parte* and should not be afforded full faith and credit.

"Federal courts are obliged by statute to give full faith and credit to state court proceedings." *Adelphia Gateway, LLC v. Pennsylvania Env't Hearing Bd.*, 62 F.4th 819, 825 (3d Cir. 2023). 28 U.S.C. § 1738 provides that "[t]he records and judicial proceedings of any court of any [ ] State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." Federal courts must therefore give "the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Adelphia Gateway*, 62 F.4th at 825.

However, in order for a state court judgment to be granted full faith and credit—and therefore nationwide preclusive effect—the state court must have had subject matter and personal jurisdiction. *Baker*, 522 U.S. at 233 ("A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land."). In other words, a state court judgment cannot control proceedings in other states where the original judgment had "no power over those parties." *Id.* at 238. When determining the preclusive effect of a state court judgment in a subsequent federal

---

[8] Shayne's motion also fails to provide a statement of material facts not in dispute as required by Local Civil Rule 56.1(a). Shayne has already been advised previously of this requirement and nevertheless has once again failed to comply with the Court's instruction. (*See* ECF No. 160 at 11.)

lawsuit, federal courts should apply the preclusion law of the state in which the judgment or order was entered. *Marrese v. Am. Acad. of Orthopedic Surgeons*, 470 U.S. 373, 380 (1985); *see also Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481–82 (1982); *In re Asbestos Prods. Liability Litig. (No. VI)*, 921 F.3d 98, 104 (3d Cir. 2019).

i.   New Jersey Superior Court Judgment

This Court will first address the effect of the New Jersey Superior Court judgment on this interpleader action. On December 5, 2018, the New Jersey Superior Court entered a "[f]inal judgment . . . in favor of [Greenwood] . . . and against [Shayne], in the amount of $279,223.16" related to Shayne's "fraudulent transfer" of funds from Charlotte's accounts to his own. (Kravitz Decl., Ex. 3, ECF No. 43-2 at 13.) This Court finds that this judgment is entitled to full faith and credit and therefore has preclusive effect.

Shayne argues that all New Jersey court orders related to him should not be given full faith and credit because "no New Jersey Court had jurisdiction."[9] (ECF No. 371 at 6.) First, with respect to subject matter jurisdiction, state trial courts are courts of general jurisdiction, *see Aldinger v. Howard*, 427 U.S. 1, 15 (1976), and there appears to be no preemption issue in this context. This Court therefore finds that the New Jersey Superior Court properly exercised subject matter

_____

[9] Shayne also argues that the New Jersey orders are not entitled to full faith and credit because they do not mention the individual accounts at issue in this case. This Court fails to see the relevance of this contention. The New Jersey Superior Court judgment entitles Greenwood to $279,223.16—more than the $220,832.78 deposited by Discover into the Court Registry. Therefore, the New Jersey judgment would dispose of the entire *res* regardless of which individual accounts were named. Moreover, Shayne's own submissions to the Court belie his argument that the frozen Discover accounts now in the Court Registry have nothing to do with the New Jersey Superior Court judgment. (ECF No. 51-1 at 2–3.) For example, among the fraudulent transfers identified by the New Jersey Superior Court was a transfer of $38,957.76 from Charlotte's Santander account and a transfer of $25,553.99 from Charlotte's PNC account. (*See* Kravitz Decl., Ex. 1, ECF No. 43-2 at 7.) Shayne submitted a "certification" to the Court representing that both Santander and PNC sent him checks for these exact amounts, which he then "deposited into a Discover Bank account." (ECF No. 51-1 at 16.)

jurisdiction over the proceeding. Second, with respect to the court's personal jurisdiction over Shayne, the doctrine of issue preclusion prevents Shayne from making this argument.

In New Jersey, issue preclusion bars re-litigation of issues where: "(1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." *Allen v. V&A Bros.*, 26 A.3d 430, 444 (N.J. 2011) (citations omitted).

The record before this Court demonstrates that Shayne already contested the New Jersey Superior Court's finding of personal jurisdiction over him in the state court proceedings. (*See, e.g.*, ECF No. 250-1 at 93.) Indeed, during a status conference in this matter before Chief Judge Wolfson, Shayne confirmed on the record that he had previously asserted a personal jurisdiction argument, and, according to counsel for Greenwood, "the judge ruled on it and found that the court had jurisdiction."[10] (Oct. 21, 2019 Tr. 8:8 to 9:8.) Shayne further revealed that the issue of personal jurisdiction was "under appeal." (*Id.* at 8:21.) In fact, the very first issue Shayne raised in his Notice of Appeal was that he "was not subject to jurisdiction of this court, and court grossly erred by denying motion to dismiss him from lawsuit, as he had no ties to State." (Kravitz Decl., Ex. 20, ECF No. 293-2 at 199.) The Appellate Division dismissed Shayne's appeal, (*id.* at 219), and the New Jersey Supreme Court denied Shayne's petition for certification thereafter, (*id.* at 221). Thus, the identical issue of the New Jersey Superior Court's personal jurisdiction over Shayne was actually litigated and determined in a final judgment on the merits between these same parties. *See*

---

[10] Shayne appears to have been very evasive with the Court in acknowledging that he actually raised a personal jurisdiction argument. (*See id.* at 8:8–25.)

*Allen*, 26 A.3d at 444. The jurisdictional determination was also essential to the final judgment on the merits because the judgment could not have been validly entered had the court not affirmatively found that it had personal jurisdiction over Shayne. *See Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). Therefore, Shayne is precluded from raising this argument again in this proceeding.

Having found that the New Jersey Superior Court final judgment was rendered by a court with both subject matter and personal jurisdiction, this Court finds that the judgment is entitled to full faith and credit and preclusive effect. In short, the judgment in favor of Greenwood and against Shayne for $279,223.16 is binding on this Court.

ii.     South Carolina Probate Court Order

The Court next turns to the effect of the South Carolina Probate Court order on this interpleader action. Immediately after Greenwood was granted partial summary judgment on October 9, 2018 in the New Jersey proceeding (of which Shayne was clearly a party), he then pursued and obtained a state court order in South Carolina in what can only be viewed as an attempt to thwart and circumvent the ongoing proceedings in New Jersey Superior Court. The South Carolina order, entered on October 17, 2018, essentially attempts to invalidate the New Jersey state court proceedings and mandate that Discover unfreeze the funds at issue in this case. (ECF No. 1-3 at 26–29.) Unlike the New Jersey judgment, the Court finds that the South Carolina order is not entitled to full faith and credit in the instant action. While state court proceedings, in addition to final judgments, may be entitled to full faith and credit, *see Adelphia Gateway*, 62 F.4th at 825, this Court finds that it is not bound by the South Carolina Probate Court order because: (1) the order is irrelevant at this stage of this interpleader action, and (2) the order was issued *ex parte*.

First, the South Carolina Probate Court order is irrelevant at this stage of the litigation because it only directed Discover to unfreeze Shayne's accounts. (ECF No. 1-3 at 29.) While that order may have been relevant to a finding that Discover was entitled to interpleader relief, (*see* ECF No. 337 at 9–11), the order no longer has any bearing on this action for two reasons. First, the Court has already determined that Discover is entitled to interpleader relief. (ECF No. 337 at 9–11.) Discover has since deposited the funds into the Court Registry and has been dismissed Discover from this action. (ECF Nos. 381, 384.) Second, the proceedings appear to have been stayed pending the resolution of this interpleader. (*See* Murphy Certif. at *58.)

Moreover, the South Carolina Probate Court order does not preclude a judgment between Greenwood and Shayne in this interpleader because Greenwood was not a party to the South Carolina proceedings. As discussed above, in determining the preclusive effect of a state court order in a subsequent federal lawsuit, the federal court should apply the preclusion law of the state in which the order was rendered. *Marrese*, 470 U.S. at 380; *see also Kremer*, 456 U.S. at 481–82. Therefore, in determining whether the Court is precluded from adjudicating this case based on the South Carolina order, the Court must turn to South Carolina's preclusion laws.

In South Carolina, claim preclusion may be applied if the following factors are met: "(1) the identities of the parties are the same as in the prior litigation, (2) the subject matter is the same as in the prior litigation, and (3) there was a prior adjudication of the issue by a court of competent jurisdiction." *Catawba Indian Nation v. State*, 407 S.C. 526, 538 (2014). Further, the doctrine of issue preclusion requires that "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Carman v. S.C. Alcoholic Beverage Control Comm'n*, 317 S.C. 1, 6 (1994). The South Carolina

13

Supreme Court has explained that the doctrine of issue preclusion can be invoked defensively notwithstanding a lack of privity only when "the party adversely affected had a full and fair opportunity to litigate the relevant issue effectively in the prior action." *Graham v. State Farm Fire & Cas. Ins. Co.*, 277 S.C. 389, 390–91 (1982). The Court finds that neither claim nor issue preclusion apply because Greenwood was neither a party in the South Carolina litigation nor had a full and fair opportunity to litigate the issues in this interpleader in the South Carolina litigation.

The South Carolina Probate Court order, titled "Order involving protection of Les Shayne, Conservator, and for release of assets" in the matter captioned *In re: Leslie Jay Shayne in the matter of Charlotte Shayne, an incapacitated person*, was issued *ex parte* and makes no reference to Greenwood. (ECF No. 1-3 at 26–29.) The order explains that it "came before the Court pursuant to an Emergency Motion brought by Les Shayne, asking for protection and for an Order compelling the immediate release of his personal assets held by Discover Bank, to him." (*Id.* at 26.) While it appears that Discover was served in the South Carolina proceeding, a subsequent order finding Discover in contempt of the initial freeze order notes that only Shayne appeared at the Order to Show Cause hearing. (*Id.* at 43.)

There is no evidence in the record that Greenwood was served with notice of the proceeding, appeared in the action at any time, or was even aware of the existence of the action during its pendency. Indeed, Greenwood has repeatedly referenced this order as having been issued *ex parte*, and Shayne has never contested this fact. As Greenwood explained in the October 21, 2019 status conference, in which Shayne was present, "Greenwood House [is] not a party to the South Carolina action . . . [a]nd had someone sought to make Greenwood House a party, a motion to dismiss would be filed because Greenwood House has no contacts with South Carolina." (ECF No. 142 at 14:16–25.) Shayne does not argue that Greenwood has or had contacts with South

14

Carolina, or that Greenwood was in any way party to the matter. The South Carolina order, therefore, cannot bind Greenwood or affect the *res* in the Court Registry.

As a result of the probate judge's conduct related to this case, and other matters, on December 4, 2019, the South Carolina Supreme Court issued an order disqualifying him "from any further hearings with regards to litigation *In the Matter of Charlotte Shayne*," and, on October 13, 2021, suspended him for eighteen months. (ECF No. 293-2 at 83–85.) This Court also points out that Probate Court judges in South Carolina need not be licensed attorneys, and indeed, this probate judge is not one. *See* S.C. Code Ann. § 14-23-1040 (1989); (*see also* ECF No. 293-2 at 85 n. 1 ("[r]espondent is not licensed to practice law in South Carolina)). Notwithstanding these events, the original freeze order has not been vacated.

The Court also reiterates, as it has in prior proceedings, that the existence of the South Carolina order did not necessitate a stay of the action in the Court. The purpose of this interpleader was to grant Discover relief from conflicting state orders over the subject funds. In such instances, the Third Circuit has observed:

> It is, of course, the general rule that the mere pendency of a similar action in a state court does not require, nor even permit, a federal court to refuse to hear or to stay an action that is properly within its jurisdiction, and that both state and federal actions should go forward until one of them results in a judgment that may be asserted as res judicata in the other.

*NYLife Distributors, Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 376 (3d Cir. 1995) (citing *McClellan v. Carland*, 217 U.S. 268, 281–82 (1910).[11] The Court has already determined that the

---

[11] Nor do the parties argue that the *Pullman*, *Burford*, *Younger*, or *Colorado River* abstention doctrines apply, and the Court does not so find. *See NYLife Distributors, Inc.*, 72 F.3d at 376–377 (discussing the abstention doctrines in the context of interpleader).

interpleader was properly brought in the District of New Jersey, (*see* ECF No. 337), and will not relitigate this point.

    iii.    <u>*Rooker-Feldman* Doctrine</u>

Finally, the Court will address Shayne's argument that this Court lacks jurisdiction over this action under the *Rooker-Feldman* doctrine. (*See, e.g.*, ECF No. 345.) This Court is not persuaded. The *Rooker-Feldman* doctrine precludes federal courts from asserting jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). A federal claim is barred by the *Rooker-Feldman* doctrine when the claim was either "actually litigated in a state court prior to the filing of the federal action" or "inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005); *see also In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009).

However, the Supreme Court has counseled that the *Rooker-Feldman* doctrine is a "narrow" one. *Exxon Mobil Corp.*, 544 U.S. at 284. Critical to this case, the Supreme Court has made clear that the doctrine has no application to a federal suit brought by a *nonparty* to the state suit. *Johnson v. De Grandy*, 512 U.S. 997, 1005 (1994). The Court explained that the doctrine applies only when a "party losing in state court" seeks what, in substance, would be appellate review of the state court judgment. *Id.* at 1005–06. Likewise, the Third Circuit has repeatedly emphasized the "narrowness of the [Rooker-Feldman] doctrine" and advised that courts should exercise "caution" in applying same. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 167–68, 169 (3d Cir. 2010); *see also Gray v. Martinez*, 465 F. App'x 86, 88 (3d Cir. 2012).

To those ends, the Third Circuit has adopted four requirements that must be met for the doctrine to apply. The first of which is that "the federal plaintiff lost in state court." *Great W. Mining & Mineral Co.*, 615 F.3d at 166. The present action does not satisfy this requirement: Greenwood did not lose in state court. As addressed above, there is no evidence before this Court that Greenwood was even aware of the South Carolina Probate Court proceeding, let alone party to it. Accordingly, the *Rooker-Feldman* doctrine does not apply, and jurisdiction is proper over this action.

      iv.    <u>Distribution of the Interpleaded Funds</u>

This Court has thus far determined that the New Jersey Superior Court judgment for $279,223.16 in favor of Greenwood and against Shayne has preclusive effect over the present action, while the South Carolina Probate Court order does not. The Court must now turn to determining the appropriate disbursement of the funds in the Court Registry. Neither the Court nor the parties have been able to successfully determine precisely how much of the $220,832.78 in the Court Registry belongs to Shayne and how much of it belongs to Charlotte.[12] The Court's predecessors in this case, and the parties, have debated the underlying relevance of this issue.

The Court now finds this issue immaterial because the amount that Shayne owes to Greenwood under the New Jersey Superior Court judgment, $279,223.16, *exceeds* the amount in the Court Registry, $220,832.78. Since the New Jersey Superior Court has already determined that Shayne owes Greenwood $279,223.16, it is irrelevant how much of the frozen Discover funds are Charlotte's and how much are Shayne's. Even assuming *arguendo* that *all* of the frozen funds are

---

[12] The Court notes that Shayne has continued to claim throughout this litigation that he is entitled to *all* of the frozen funds because the frozen funds are exclusively his "personal assets." (*See, e.g.*, ECF No. 51-1 at 2.) However, as discussed above, the New Jersey Superior Court has already ordered Shayne to disburse all funds in his possession or control that "belong or previously belonged to [Charlotte]." (ECF No. 43-1.) As this Court must give full faith and credit to the New Jersey Superior Court's judgment in favor of Greenwood and against Shayne, it cannot accept Shayne's repeated assertions that he is entitled to the entirety of the *res*.

Shayne's, Greenwood could then seek to levy $279,223.16 from Shayne's accounts elsewhere to perfect the New Jersey judgment. Because the New Jersey judgment is for an amount greater than the *res* in this interpleader action, Greenwood is entitled to entry of judgment of the entire *res*. The only issue before this Court is whether Greenwood, Charlotte, or Shayne should be entitled to the funds currently frozen in the Court Registry.

Moreover, Shayne's straw argument attempting to cast doubt on the source of funds at issue is not only irrelevant but of his own making: even if the issue of determining the precise source of funds of Charlotte versus Shayne were relevant, the Court will not countenance Shayne's continued obstructionist conduct and then allow him to take refuge in same. Shayne has repeatedly failed to provide the discovery ordered by the Court, which sought to identify what amount of the *res*, if any, belonged to Shayne. On December 7, 2020, the Honorable Tonianne J. Bongiovanni ordered Shayne to, by January 21, 2021, confirm the "ownership interest . . . and/or the source of funds" in a TD Ameritrade account that appears to have belonged to Charlotte before Shayne made a series of electronic deposits into his own bank account and to identify the source of the funds associated with a number of additional deposits into Shayne's accounts. (*See* ECF No. 212 at 7.) Almost four years later, Shayne has yet to produce the discovery ordered by the Court—nor has Shayne provided any particularized information demonstrating the sources of the funds transferred to his accounts. (*See, e.g.*, ECF No. 343 at 9–10; *see also* ECF No. 337 at 5 n.9 (in her February 28, 2023 opinion granting interpleader relief, Judge Castner observed that the "discovery process has stalled . . . and both Discover and Greenwood submit that Shayne has yet to provide discovery ordered by the Court in its December 7, 2020 Order.").)[13] Based on Shayne's failure to comply

---

[13] The Court notes that Shayne provided a "certification" that was both dilatory and deficient on May 31, 2021 purportedly in response to the Court-ordered discovery. (ECF No. 250-1.) This certification fails to provide the information requested by Greenwood and ordered by the Court. In it, Shayne raises the same arguments raised in numerous previous filings and represents that he retained Certified Public Account,

with Magistrate Judge Bongiovanni's discovery order, Greenwood moved for sanctions under Federal Rule of Civil Procedure 37. (ECF No. 343 at 10–11.)

Under Federal Rule of Civil Procedure 37(b)(2)(A), this Court has broad discretion to impose sanctions on a party that fails to comply with discovery orders. Fed. R. Civ. P. 37(b)(2)(A); *see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 538 (3d Cir. 2007), amended on reh'g (Mar. 8, 2007) ("The decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court."); *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639 (1976) (per curiam)). Such sanctions must be just and related to the claims at issue. *Estate of Spear v. Comm'r of Internal Revenue Serv.*, 41 F.3d 103, 109 (3d Cir.1994). They may include, *inter alia*, "directing that the matters embraced in the order or other designated facts be taken as established," "prohibiting the disobedient party from supporting or opposing designated claims," and other "just orders." Fed. R. Civ. P. 37(b)(2)(A).

In additional to the formal rules, the Court also has "inherent power to police litigant misconduct and impose sanctions on those who abuse the judicial process." *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 84 (D.N.J. 2006); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73 (3d Cir. 1994) (noting that the Federal Rules of Civil Procedure and Congressional statutes do not exhaust the district courts'

---

Cynthia Busbee, who completed a forensic accounting of the funds at issue. (*Id.*) However, Busbee's accounting report was prepared *prior* to the Court's December 7, 2020 discovery order. Moreover, on June 23, 2021, Judge Bongiovanni found that Busbee's accounting report did not address the source of the funds in question; rather, the majority of the report addressed only the ownership of the funds in Shayne's accounts "after the deposits had been effectuated." (ECF No. 253 at 3.) Magistrate Judge Bongiovanni also found that Greenwood had demonstrated a need for the requested account information and that the information sought was "well defined and clearly relevant to these proceedings." (*Id.*)

power to control misbehaving litigants). The Court's inherent sanctioning power even includes *sua sponte* dismissal of a case. *Chambers*, 501 U.S. at 44–45.

The Court finds that sanctions are warranted under Rule 37(b) and the Court's inherent power. Given Shayne's patent attempts to obfuscate and delay resolution of this case on the merits by refusing to comply with Court-ordered discovery, the Court is compelled to find that the source of all of the funds in the *res* was Charlotte's accounts. In other words, the Court will not consider Shayne's argument that any amount of the funds in the Court Registry belonged to him or his opposition to disbursement of the *res* based on same. He was ordered to demonstrate ownership over the funds years ago and cannot now blindly seek refuge in his refusal to do so and flouting of that order.

In the Third Circuit, where a sanction may deprive a party of the right to proceed with or defend against a claim, courts must weigh six factors in deciding whether to impose that sanction: "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." *Poulis v. State Farm Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (emphasis omitted). The *Poulis* factors are typically reviewed in cases where the Court is imposing the sanction of *sua sponte* dismissal. No single *Poulis* factor is determinative, and sanctions may be appropriate even if some of the factors are not met. *See Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992). When a litigant's conduct makes adjudication of a case impossible, "such balancing under *Poulis* is unnecessary." *Iseley v. Bitner*, 216 F. App'x 252, 255 (3d Cir. 2007); *Guyer v. Beard*, 907 F.2d 1424, 1430 (3d Cir. 1990).

This Court has previously noted Shayne's "history of dilatory, contumacious and obstructive conduct in this and other related court proceedings, which can only be described as an abuse of the judicial process." (ECF No. 364 at 2). In other words, Shayne is a scattershot litigant whose serial and unrelenting filings and refusal to comply with Court orders were clearly designed and calculated to distract, delay, and obstruct. In a revealing moment demonstrating Shayne's overriding obstructionist motive, after filing his June 13th, 15th, 16th, and 22nd motions, Shayne wrote to opposing counsel, asking, "[d]o y'all give up yet?" (ECF No. 385 at 3.) Shayne's behavior throughout this litigation's almost five-year history has made adjudication of this interpleader near impossible.[14] Nonetheless, in an abundance of caution, this Court will weigh the *Poulis* factors in determining whether it is appropriate to, as a sanction in this case, presume that the source of all of the funds in the Court Registry was Charlotte's accounts. This Court finds that all six factors militate strongly in favor of prohibiting Shayne from claiming ownership interest over any amount of the frozen funds.

a. <u>Extent of the Party's Personal Responsibility</u>

Although a party may suffer sanctions "because of his counsel's unexcused conduct," *Link v. Wabash R. Co.*, 370 U.S. 626, 633 (1962), the Third Circuit has "increasingly emphasized [imposing] sanction on the delinquent lawyer, rather than on a client who is not actually at fault," *Carter v. Albert Einstein Medical Ctr.*, 804 F.2d 805, 807 (3d Cir. 1986). Therefore, in analyzing the first *Poulis* factor, courts should consider "whether the party bears *personal* responsibility for the action or inaction." *Adams v. Tr. of the New Jersey Brewery Employees' Pension Tr. Fund*, 29

---

[14] For example, in addition to numerous attempts to stay, extend, and otherwise delay these proceedings, Shayne has filed at least eight (8) motions for reconsideration or motions to vacate, (*see, e.g.*, ECF Nos. 132, 162, 171, 174, 285, 344, 377, 378), as well as a slew of other motions for "emergent relief" or other similar requests, (*see, e.g.*, ECF Nos. 144, 150, 154, 168, 177, 213, 217, 356, 357, 379.) Shayne has also sought recusal of Chief Judge Wolfson, Magistrate Judge Bongiovanni, Honorable Rukhsanah L. Singh, Judge Castner, and the Undersigned, (*see, e.g.*, ECF Nos. 98, 121, 225, 261, 316 330, 382.)

F.3d 863, 873 (3d Cir. 1994) (emphasis added). As Shayne is proceeding *pro se*—and, indeed, is himself a licensed attorney—this Court finds that Shayne bears personal responsibility for his failure to comply with discovery in this action.

    b.  <u>Prejudice to the Adversary</u>

With respect to the second *Poulis* factor, the Third Circuit has counseled that prejudice "bear[s] substantial weight" in support of sanctions. *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984). Examples include "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Id.* Here, Shayne's obstructive behavior and delay tactics have significantly increased the cost and duration of this litigation, which has now been ongoing for almost five years, resulting in prejudice to Greenwood. (ECF No. 366 at 4 (granting Discover above-average fees due to Shayne's "profligate motion practice and repeated requests for extensions and accommodations that have generated the inordinate protracted litigation in this case")); *see also Akishev v. Kapustin*, 23 F.Supp.3d 440, 447 (D.N.J. 2014) (noting that financial hardship may rise to a level of undue prejudice).

    c.  <u>History of Dilatoriness</u>

As for the third *Poulis* factor, there is no question that Shayne has exhibited "[e]xtensive or repeated delay or delinquency." *Adams*, 29 F.3d at 874. As will be addressed further herein, Shayne has submitted at least twenty-nine (29) motions to stay or requests for extensions. (*See, e.g.*, ECF Nos. 170, 185, 200, 282, 287, 296, 300, 301, 302, 304, 307, 308, 317, 328, 329, 333, 345, 347, 376, 377, 378, 383.) This Court finds that Shayne's history of dilatoriness overwhelmingly counsels in favor of sanctions.

d.   Whether the Conduct of the Party was Willful or in Bad Faith

In analyzing whether a party's conduct constitutes "bad faith," Courts look to whether the behavior was "willful," "self-serving," or "contumacious." *Adams*, 29 F.3d at 874; *Scarborough*, 747 F.2d at 875. Given the number of filings Shayne has entered onto the docket since Magistrate Judge Bongiovanni ordered discovery on December 7, 2020, Shayne's failure to comply with discovery can only be described as willful—or, as this Court has previously noted, an abuse of the judicial process. (*See* ECF No. 364 at 2.) It is apparent to this Court that Shayne has ignored the Court's discovery order in an effort to continue to muddy the water regarding the origins of the funds in the Court Registry until Greenwood finally "give[s] up." (*See* ECF No. 385 at 3.)

e.   Alternate Sanctions

Under the fifth *Poulis* factor, this Court should consider the effectiveness of other sanctions. Given Shayne's continued and deliberate refusal to comply with a Court order regarding discovery, the Court is compelled to find that all of the funds in the *res* originated in Charlotte's accounts. Shayne's yearslong contumacious conduct cannot continue and requires precluding his unsubstantiated, naked claims of any, let alone sole ownership, to the *res*. Under this Court's broad discretion to manage discovery—as well as its inherent authority to control its docket, *United States v. Washington*, 869 F.3d 193, 220 (3d Cir. 2017)—this Court has determined that Shayne's refusals to cooperate have gone on long enough.

f.   Meritoriousness of the Claim

Turning to the final factor, courts evaluate the meritoriousness of the party's claim or defense by asking whether "the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." *Adams*, 29 F.3d at 876 (quoting *Poulis*, 747 F.2d at 869–70). This Court has already determined that the New Jersey Superior Court

23

order is binding while the South Carolina Probate Court order has no preclusive effect over this case. Thus, Shayne has not made out a meritorious defense.

Under the *Poulis* factors, finding that the source of all of the interpleaded funds was Charlotte's accounts is an appropriate and reasonable sanction in this case. For the reasons set forth above, Greenwood is thus entitled to the entire amount in the Court Registry: $220,832.78. Greenwood's Motion for Sanctions and to Levy, (ECF No. 343), is GRANTED, and Shayne's Motion for Summary Judgment, (ECF No. 371), is DENIED with prejudice.

**B. SHAYNE'S PENDING MOTIONS**

This Court now turns to Shayne's remaining motions. This most recent wave of motion practice is nothing new for Shayne. He has been repeatedly placed on notice that the filing of repetitive, meritless, and voluminous motions without leave of Court could subject him to monetary and non-monetary sanctions. (*See* ECF Nos. 119, 134, 137, 197, 226, 228, 256, 266, 335.) For example, on September 26, 2019, the Court directed the parties "to abstain from filing any additional motions or requests without leave of court." (ECF No. 137.) On September 8, 2020, the Court reminded the parties that they were "prohibited from filing any motion without prior approval from the Court." (ECF No. 197 at 3.) On February 8, 2021, the Court again admonished the parties, stating, "**to be clear, going forward, no motion shall be considered that is filed without the Court's prior approval**," (ECF No. 226 at 1) (emphasis in original), and advised that any motions filed without prior approval will be "summarily terminated." *Id.* Now, Shayne has, once again, defied the Court's orders, and the motions may be denied on that ground alone. However, this Court will go the extra step and address the merits of each of Shayne's motions.

i.    <u>Motions to Stay</u>

It bears repeating that Shayne's requests for a stay or extension mark the twenty-ninth (29th) attempt to delay these proceedings. In a February 28, 2023 Opinion, Judge Castner documented approximately twenty-one (21) formal and informal extension requests, which she described as "nothing more than a veiled attempt to avoid a final resolution to these proceedings." (ECF No. 335 at 12; *see also id.* at 2–5 (chronicling Shayne's extensive motion practice).) Since that opinion, Shayne has filed eight (8) additional formal and informal stay requests alone. (ECF Nos. 344, 345, 347, 376, 377, 378, 379, 383.) Justifications for his stay requests have included vacation plans (ECF No. 107); issues with his dog's health (ECF Nos. 28, 131); damaged vehicles and other court cases (ECF No. 182); computer issues (ECF No. 184, 199); a water leak, a pending foreclosure on his ocean property, a swollen ankle, and a broken tooth (ECF No. 194); medical issues involving lasting symptoms from long COVID (ECF Nos. 300, 301, 302, 304); and other medical issues predominately related to cervical radiculopathy, for which Shayne produced some medical reports, (ECF Nos. 235, 251, 255, 328, 329, 333, 376, 378, 379, 383).

The stay of a civil proceeding is an "extraordinary remedy," though within a court's discretion if the interests of justice so require. *WalshSec., Inc. v. Christo Prop. Mgmt., Ltd.*, 7 F.Supp.2d 523, 526 (D.N.J. 1998) (citing *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970)). The movant bears the burden of proving that a stay is warranted. *See Hertz Corp. v. Gator Corp.*, 250 F.Supp.2d 421, 424–25 (D.N.J. 2003). The movant "must demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay would work damage on another party." *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075–76 (3d Cir. 1983) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). Where the party requesting the stay is ill, the Court should grant the motion when the party's participation is necessary, the stay does not

unduly prejudice another party, and the motion is not made in bad faith, bad planning, or merely to procrastinate. *See Gaspar v. Kassm*, 493 F.2d 964, 969 (3d Cir. 1974).

Shayne's most recent slate of stay requests relates to MRI reports that find "extensive nerve damage to the neck in multiple discs" that have caused a "frozen shoulder" which makes it difficult and risky for Shayne to type. (ECF Nos. 376, 379, 383.) Even assuming that Shayne indeed has serious medical issues, a stay is nonetheless not warranted in this instance because this case does not require additional briefing from Shayne. The underlying motion on which the Court now rules was filed by Greenwood on March 23, 2023, nearly six months ago. In that time, Shayne has filed several dispositive motions, including an "emergent motion to dismiss case and for immediate return of monies stolen," (ECF No. 356), as well as a motion for summary judgment, (ECF No. 371). Clearly Shayne has repeatedly filed motion after motion in this case since Greenwood's subject motion was filed. At the time the stay motions were filed, the Court did not require further briefing from Shayne on the issues discussed in this Opinion. Furthermore, as this Opinion resolves the remainder of the issues in this litigation except for attorney's fees, Shayne's motions to stay may be independently dismissed as moot.

The Court also finds much cause to doubt whether the motions have been brought in good faith. As chronicled by multiple judges in this litigation, Shayne has repeatedly brought applications and motions to unnecessarily delay proceedings in this matter and has willfully ignored Court orders to first seek leave of the Court before filing dispositive motions. (*See* ECF Nos. 137, 266, 280.) Finally, Shayne's excessive motion practice appears to be part and parcel of a deliberate war of attrition, as evidenced by Shayne goading opposing counsel, "[d]o y'all give up yet?" after filing some of his most recent motions. (ECF No. 385 at 3.) This has undoubtedly prejudiced Shayne's adversaries by substantially increasing the costs of litigation, reducing the

total amount of interpleaded funds, and protracting this litigation by years. *Akishev*, 23 F.Supp.3d at 447.

Relatedly, the consideration of whether the motions were made merely to procrastinate and obstruct also favors denial of Shayne's motions. *Gaspar*, 493 F.2d at 969. As described *supra*, Shayne has made nearly thirty (30) extension requests in these proceedings alone, which have reached their fifth year of litigation. This protracted litigation stems in part from the Court's acquiescence to many of Shayne's extension requests, (*see, e.g.*, ECF Nos. 113, 134, 200, 236, 242, 310), giving Shayne countless opportunities and all benefit of the doubt in an abundance of caution and a desire to give him every opportunity to participate in this litigation in good faith. The Court's repeated indulgence and accommodation has only been met by Shayne's brazen noncompliance with the Court's discovery and administrative orders, as well as his repeated duplicative motion practice seeking to relitigate issues that have already been decided. For these reasons, the Court DENIES Shayne's motions to stay the proceedings. (ECF Nos. 376, 377, 378, 379, 383.)

   ii.      Motion for Recusal

Shortly after Discover deposited the interpleaded funds with the Court Registry, Shayne filed a Motion for Recusal of the Undersigned. (ECF No. 382.) As noted, this appears to be Shayne's well-worn *modus operandi*. Shayne previously sought the recusal of Chief Judge Wolfson (ECF No. 98), Magistrate Judge Bongiovanni (twice) (ECF Nos. 225, 261), Magistrate Judge Singh (ECF No. 311), and Judge Castner. (ECF No. 330.)

Shayne raises several arguments in his motion to recuse the Undersigned. First, Shayne argues that the Undersigned has "permitted and rewarded Discover Bank to violate the law" by violating the South Carolina Probate Court order to unfreeze the funds and converting Shayne's

personal assets. (ECF No. 382 at 1–2.) Shayne also argues that the Court violated the law by finding jurisdiction in this action (*id.* at 2–3) and by refusing to stay this action in spite of numerous doctors' orders documenting his spinal issues and advising that he refrain from "sitting for a prolonged period or typing." (*Id.* at 4.)

Recusal rests within the sound discretion of the trial court judge and may be made pursuant to either 28 U.S.C. §§ 144 or 455. *United States v. Wilensky*, 757 F.2d 594, 599–600 (3d Cir. 1985). Under Section 144, a judge must recuse themselves where a party files a "timely and sufficient affidavit" establishing that the judge has a "personal bias or prejudice against the party seeking recusal, or in favor of the adverse party." 28 U.S.C. § 144. The movant must make a three-fold showing: (1) the facts must be material and stated with particularity; (2) the facts must be such that if true they would convince a reasonable person that a bias exists; and (3) the facts must show that the bias is personal as opposed to judicial in nature. *United States v. Thompson*, 483 F.2d 527, 528 (3d Cir. 1973).[15] Section 455(a) provides that "[a]ny . . . judge of the United States" must be disqualified "in any proceeding in which her impartiality might reasonably be questioned" when viewed from an objective standard. *In re Kensington Int'l, Ltd.*, 353 F.3d 211, 220 (3d Cir. 2003); 28 U.S.C. § 455(a).

Under both statutes, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see*

---

[15] As Shayne does not identify the statutory basis for his recusal motion, the Court evaluates his claims under both statutes. This Court additionally notes that recusal motions pursuant to Section 144 must be heard by another judge so long as the supporting affidavit meets the "sufficiency test." *In re Kensington Int'l, Ltd.*, 353 F.3d 211, 224 n.12 (3d Cir. 2003). This Court is satisfied that Shayne's supporting affidavit does not meet the "sufficiency test" and therefore may be adjudicated by this Court.

*also Securacomm Consulting, Inc. v. Securacom, Inc.*, 224 F.3d 273, 278 ("a party's displeasure with legal rulings does not form an adequate basis for recusal").

Shayne's arguments for recusal do not satisfy either statute. All but one of Shayne's bases for recusal of the Undersigned rely on merits arguments which are "[a]lmost invariably . . . proper grounds for appeal, not for recusal." *In re Kensington*, 353 F.3d at 220; *see also In re TMI Litig.*, 193 F.3d 613, 729 (3d Cir. 1999) ("adverse rulings do not warrant disqualification"). These arguments, at best, exhibit dissatisfaction with the Court's evaluation of the merits of this case and do not demonstrate the type of partiality or bias required to warrant recusal. Shayne's remaining contention regarding his medical conditions and stay motions have already been discussed in the preceding section. Accordingly, the Court DENIES Shayne's Motion for Recusal.

iii.     Motion to Compel

Finally, Shayne moves to compel Discover to answer a series of interrogatories regarding Shayne's bank accounts, including account statements and "communications of any sort[] regarding any of the funds" at issue. (ECF No. 375.)  Shayne also moves for sanctions against Discover. (*Id.*) On February 28, 2023, Judge Castner granted Discover's motion to dismiss and motion for interpleader relief, and on May 15, 2023, this Court dismissed Discover from the action with prejudice. (ECF No. 384.) Accordingly, Shayne can no longer file motions against Discover or request discovery from same, and Shayne's Motion to Compel is hereby DENIED.

IV.    **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Greenwood's Motion for Sanctions and to Levy (ECF No. 343) and directs that the interpleaded funds held in the Registry of the Court be turned over to the escrow account of Fox Rothschild LLP for distribution in accordance with the New Jersey Superior Court judgments. The Court's January 28, 2019 Order (ECF No. 36) restraining defendants from instituting or prosecuting legal proceedings in state or federal courts pursuant to 28 U.S.C. § 2361 is hereby vacated. Shayne's motions for summary judgment (ECF No. 371), to stay or vacate the Court's preceding orders (ECF Nos. 376, 377, 378, 379, 383), to compel Discover to respond to interrogatories (ECF No. 375), and for recusal of the Undersigned (ECF No. 382) are **DENIED**. Greenwood has twenty-one (21) days from the issuance of this Opinion to file a certification of reasonable expenses, including attorney's fees. Shayne has fourteen (14) days thereafter to file an opposition. An appropriate Order accompanies this Opinion.

_____
ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: September 15, 2023

IV.     **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Greenwood's Motion for Sanctions and to Levy (ECF No. 343) and directs that the interpleaded funds held in the Registry of the Court be turned over to the escrow account of Fox Rothschild LLP for distribution in accordance with the New Jersey Superior Court judgments. The Court's January 28, 2019 Order (ECF No. 36) restraining defendants from instituting or prosecuting legal proceedings in state or federal courts pursuant to 28 U.S.C. § 2361 is hereby vacated. Shayne's motions for summary judgment (ECF No. 371), to stay or vacate the Court's preceding orders (ECF Nos. 376, 377, 378, 379, 383), to compel Discover to respond to interrogatories (ECF No. 375), and for recusal of the Undersigned (ECF No. 382) are **DENIED**. Greenwood has twenty-one (21) days from the issuance of this Opinion to file a certification of reasonable expenses, including attorney's fees. Shayne has fourteen (14) days thereafter to file an opposition. An appropriate Order accompanies this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: September 15, 2023

30